UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ROBYN S.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of the Social Security Administration,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 2:25-cv-00399<br><br>Magistrate Judge Daphne A. Oberg |

Robyn S.[1] brought this action for judicial review of the denial of her application for disability insurance benefits.[2] The administrative law judge (ALJ) who addressed Ms. S.'s application determined she did not qualify as disabled.[3] Ms. S. argues the ALJ erred in his residual functional capacity assessment by rejecting all expert opinions and omitting mental limitations.[4] As explained below, the ALJ applied the correct legal standards, and substantial evidence supports his findings. Accordingly, the Commissioner's decision is affirmed.[5]

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in court orders in certain cases, including social security cases, the plaintiff is referred to by first name and last initial only.

[2] (Compl., Doc. No. 1.)

[3] (Certified Tr. of Admin. R. (Tr.) 17–26, Doc. No. 10.)

[4] (*See* Opening Br. 8, Doc. No. 11.)

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 9.)

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of the Commissioner's final decision. This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[6] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[11] And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[12]

---

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation omitted).

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotation marks omitted).

[9] *Id.* at 103 (citation omitted).

[10] *Id.* (citation omitted).

[11] *Lax*, 489 F.3d at 1084 (citation omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[13] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[14]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;
2) she has a severe medically determinable physical or mental impairment;
3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);
4) she has the residual functional capacity to perform past relevant work; and
5) she has the residual functional capacity to perform other work, considering her age, education, and work experience.[15]

---

[13] 42 U.S.C. § 423(d)(1)(A).

[14] *Id.* § 423(d)(2)(A).

[15] *See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

In the first four steps, the claimant has the burden of establishing disability.[16] And at step five, the Commissioner must show the claimant retains the ability to perform other work in the national economy.[17]

## PROCEDURAL HISTORY

Ms. S. applied for disability insurance benefits under Title II of the Social Security Act,[18] alleging she became disabled in October 2020.[19] She later amended her alleged onset date to August 30, 2018.[20] After an administrative hearing,[21] the ALJ issued a decision in November 2023, denying benefits.[22]

The ALJ evaluated whether Ms. S. was disabled between her amended onset date (August 30, 2018) and her last insured date (June 30, 2019).[23] At step two of the sequential evaluation, the ALJ found Ms. S. had the severe impairments of "seronegative rheumatoid arthritis; fibromyalgia; degenerative disc disease of the cervical and thoracic spine; degenerative joint disease of her bilateral knees; and mild

---

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] 42 U.S.C. §§ 401–434.

[19] (*See* Tr. 17, 182–85.)

[20] (*See* Tr. 17, 35.)

[21] (*See* Tr. 32–72.)

[22] (Tr. 17–26.)

[23] (*See* Tr. 17–19, 25.) To qualify for disability insurance benefits, a claimant must establish disability before her last insured date. *See* 20 C.F.R. § 404.131.

asthma."[24] He concluded Ms. S.'s anxiety disorder and depression were nonsevere.[25] At step three, the ALJ found Ms. S.'s impairments did not meet or medically equal an impairment listing.[26]

The ALJ then determined Ms. S. had the residual functional capacity to perform "light work" but with the following restrictions: "[S]he can be on her feet for four hours in an eight-hour work shift; occasionally perform all postural activities; frequently reach, handle, finger, and feel; and have no concentrated exposure to pulmonary irritants."[27] At step four, based on this residual functional capacity assessment and the testimony of a vocational expert, the ALJ found Ms. S. could perform her past work as a customer order clerk.[28] Accordingly, the ALJ found Ms. S. not disabled and denied her claim.[29] This decision became final when the Appeals Council denied Ms. S.'s request for review.[30]

**ANALYSIS**

Ms. S. raises two claims of error related to the ALJ's residual functional capacity (RFC) determination. First, she argues the ALJ improperly assessed her RFC without

---

[24] (Tr. 20.)

[25] (*Id.*)

[26] (Tr. 21–22.)

[27] (Tr. 22.)

[28] (Tr. 25.)

[29] (Tr. 25–26.)

[30] (Tr. 1–3.)

crediting any medical opinions.[31] Second, she argues the ALJ erred by omitting mental limitations from the RFC without adequate explanation.[32] As explained below, Ms. S. has not shown error.

A claimant's residual functional capacity (RFC) reflects the most she can do in a work setting considering her limitations.[33] In assessing RFC, the ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."[34] The ALJ considers all relevant evidence in the record.[35]

A. Formulating RFC Without Crediting Medical Opinions

The ALJ did not err in formulating the RFC without crediting any medical opinion evidence. In assessing RFCs, ALJs must consider the persuasiveness of medical opinions and prior administrative medical findings, and explain how they consider the supportability and consistency of opinion evidence.[36] But "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical

---

[31] (Opening Br. 10–15, Doc. No. 11.)

[32] (*Id.* at 16–20.)

[33] *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996).

[34] SSR 96-8p, 1996 SSR LEXIS 5, at *5.

[35] *See* 20 C.F.R. § 404.1545(a)(3).

[36] 20 C.F.R. § 404.1520c.

opinion on the functional capacity in question."[37] "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."[38] This is because "[t]he determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect her ability to perform work-related activities."[39]

Here, the ALJ considered the medical findings of the state agency consultants who evaluated Ms. S.'s claim on initial review and reconsideration. The consultants found that while Ms. S. had severe physical impairments, there was "insufficient evidence to establish any limitations."[40] The ALJ deemed these opinions unpersuasive, noting the consultants evaluated Ms. S.'s claim based on her original alleged onset date of October 2020, but she later amended the onset date to August 2018 and provided additional medical records.[41] Because the consultants did not adequately consider the two years of records from before Ms. S.'s original alleged onset date, the ALJ found their opinions insufficiently supported.[42] He also found them "inconsistent with the

---

[37] *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012); *see also Terwilliger v. Comm'r, Soc. Sec. Admin.*, 801 F. App'x 614, 628 (10th Cir. 2020) (unpublished) (stating the same proposition); *Berumen v. Colvin*, 640 F. App'x 763, 766 (10th Cir. 2016) (unpublished) (same).

[38] *Chapo*, 682 F.3d at 1288 (alteration in original) (citation omitted).

[39] *Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) (unpublished); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *5 ("RFC is assessed by adjudicators at each level of the administrative review process based on all of the relevant evidence in the case record.").

[40] (Tr. 24.)

[41] (*Id.*)

[42] (Tr. 24–25.)

additional medical evidence, including chronic pain complaints" and "problems with asthma."[43] The record contained no other opinion evidence, but the ALJ explained "a review of the entire record supports the limitations set forth in the [RFC]."[44]

In the absence of persuasive opinion evidence regarding Ms. S.'s limitations, the ALJ properly assessed her RFC based on other evidence in the record. He discussed Ms. S.'s subjective symptoms, including reports of pain in her hands, fingers, wrists, arms, legs, knees, and feet, and her testimony that she could not stand longer than ten minutes and required constant breaks.[45] The ALJ found Ms. S.'s reported limitations inconsistent with the medical records from the relevant period.[46] Specifically, he noted the records showed Ms. S. could walk unassisted, she had a "consistently normal gait and an active range of motion in her spine," she was "aerobically active and exercised frequently despite her pain," she "remained stable on her current medication regimen[]," she had normal sensation, and there was "little to no indication that she did not have normal use [of] both of her upper extremities."[47] The ALJ also acknowledged Ms. S.'s "spine doctor and neurologist found that her issues did not warrant surgical intervention."[48] And he summarized various negative or "normal" test results relating to

---

[43] (Tr. 25.)

[44] (*Id.*)

[45] (Tr. 23.)

[46] (*Id.*)

[47] (Tr. 23–24.)

[48] (Tr. 24.)

her fibromyalgia and arthritis.[49] In the end, the ALJ concluded Ms. S.'s "[r]heumatoid arthritis, spinal degenerative disc disease and degenerative joint disease cause[d] [her] pain and have been addressed with the limitations that she can be on her feet for four hours in an eight-hour work shift; occasionally perform all postural activities; and frequently reach, handle, finger, and feel."[50] He also limited her exposure to pulmonary irritants due to asthma.[51]

Ms. S. contends the ALJ based his findings on his improper lay interpretation of raw medical data.[52] In support of this contention, Ms. S. points to the ALJ's statement during the hearing:

> [I]t almost sounds to me like the fibromyalgia, at least at that time, was the bigger of the two problems. Now, I could be wrong, it's just reading this report and some of the other reports, that's kind of the conclusion [it] points to in my mind. But I'm not a doctor, you know. I'm just the judge.[53]

But nothing in ALJ's decision suggests he made any improper lay interpretation of medical evidence. The ALJ cited medical providers' observations, assessments, and

---

[49] (*Id.*)

[50] (Tr. 25.)

[51] (*Id.*)

[52] (Opening Br. 14, Doc. No. 11.)

[53] (Tr. 45.)

reports of test results—not his own interpretation of raw medical data.[54] And it fell properly within his role to determine Ms. S.'s RFC based on the medical record.[55]

Ms. S. also suggests the ALJ should have ordered a consultative examination or requested updated medical opinions.[56] "[T]he ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."[57] But this duty "is not unqualified" and, ordinarily, "the ALJ may reasonably rely on counsel to identify the issue or issues requiring further development."[58] At the hearing, Ms. S.'s counsel noted some medical records were forthcoming based on the amended onset date, but she did not suggest any need for updated medical opinions or a consultative examination.[59] Further, as the Commissioner points out, it is unclear how a new consultative examination would help. After all, the relevant period for purposes of the disability determination was August 2018 through June 2019—more than four years before the hearing. And the medical records the ALJ relied on (discussed above) were

---

[54] *See Neal v. Comm'r, Soc. Sec. Admin.*, 782 F. App'x 722, 724 (10th Cir. 2019) (unpublished) (finding an ALJ did not make an improper lay interpretation of medical evidence where the ALJ did not interpret raw medical data or step into the shoes of a medical examiner).

[55] *See Chapo*, 682 F.3d at 1288 ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." (alternation in original) (citation omitted)).

[56] (*See* Opening Br. 13, Doc. No. 11.)

[57] *Wall v. Astrue*, 561 F.3d 1048, 1062–63 (10th Cir. 2009) (citation omitted).

[58] *Id.* at 1063 (emphasis and internal quotation marks omitted).

[59] (*See* Tr. 34–36.)

sufficient to make a disability determination. Under these circumstances, the ALJ did not err by not seeking updated medical opinions or a consultative examination.[60]

For all these reasons, the ALJ did not err by determining Ms. S.'s RFC without relying on medical opinion evidence.

B. Omission of Mental Limitations

Ms. S. next contends the ALJ erred by omitting mental limitations from the assessed RFC, despite finding mild limitations in mental functioning at steps two and three of the sequential evaluation.[61] As explained below, Ms. S. has demonstrated no error.

At steps two and three of the sequential evaluation process, an ALJ must rate the degree of limitation resulting from medically determinable mental impairments in four broad functional areas, known as the "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.[62] These criteria are "not an RFC assessment but are used to rate the severity of mental impairment(s)

---

[60] *See Jazvin v. Colvin*, 659 F. App'x 487, 489–90 (10th Cir. 2016) (unpublished) (finding an ALJ was not required to order a consultative examination, where the claimant's attorney did not request one and her medical records provided enough information to make a disability determination); *Cowan v. Astrue*, 552 F.3d 1182, 1187–88 (10th Cir. 2008) (finding no need to further develop the record where "there was no request from [the claimant's] counsel for any other existing medical records to be obtained, for a consultative mental examination to be performed, or for any other development of the record to be undertaken").

[61] (Opening Br. 16–20, Doc. No. 11.)

[62] *See* 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00E.

at steps 2 and 3 of the sequential evaluation process."[63] The ALJ must rate the claimant's degree of limitation in each area on a five-point scale: none, mild, moderate, marked, or extreme.[64] At step two, a mental impairment is not severe if it results in no more than mild limitations in these areas.[65] At step three, to meet the requirements of "paragraph B" of the mental disorder listings, the claimant must have "extreme limitation of one, or marked limitation of two, paragraph B areas."[66]

A finding of limitation under the paragraph B criteria at steps two and three "does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."[67] But "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five."[68] In determining RFC, an ALJ "must consider the combined effect of all medically determinable impairments, whether severe or not."[69] And "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more

---

[63] SSR 96-8p, 1996 SSR LEXIS 5, at *13.

[64] *See* 20 C.F.R. § 404.1520a(c)(4); 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00F2.

[65] *See* 20 C.F.R. § 404.1520a(d)(1).

[66] 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00F2.

[67] *Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) (unpublished) (addressing a finding of moderate limitation at step three).

[68] *Wells v. Colvin*, 727 F.3d 1061, 1068–69 (10th Cir. 2013).

[69] *Id.* at 1069 (emphasis omitted) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)).

detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings."[70]

Here, the ALJ found Ms. S. mildly limited in two "paragraph B" areas—concentrating, persisting, or maintaining pace, and adapting or managing herself—and concluded her mental impairments were nonsevere.[71] (He found no limitations in the other areas.)[72] He acknowledged the paragraph B limitations were not an RFC assessment, and noted the assessed RFC "reflect[ed] the degree of limitation [he] found in the 'paragraph B' mental function analysis."[73] The ALJ did not include any mental limitations in the RFC assessment.[74]

Ms. S. argues that because the ALJ found mild limitations under the paragraph B criteria, he had to either include mental limitations in the RFC or explain their omission.[75] The Commissioner, on the other hand, contends no specific explanation is required so long as the record shows the ALJ considered all medically determinable impairments in assessing the RFC.[76] The Commissioner is correct.

---

70 *Id.* (quoting SSR 96-8p, 1996 SSR LEXIS 5, at *13).

71 (Tr. 21.)

72 (Tr. 20.)

73 (Tr. 21.)

74 (*See* Tr. 22, 25.)

75 (Opening Br. 19, Doc. No. 11.)

76 (Comm'r's Br. 10, Doc. No. 13.)

In support of her position, Ms. S. relies on *Farrill v. Astrue*,[77] an unpublished Tenth Circuit decision. In *Farrill*, the court noted "the RFC did not include any mental limitations, and the ALJ never explained why he chose not to include any mental limitations in the RFC, despite his previous assessment of mild limitations."[78] The court found the ALJ also failed to inquire into the mental demands of the claimant's past relevant work, as required.[79] As a result, the court could "not sustain the Commissioner's decision that [the claimant could] perform her past relevant work," and it remanded for further proceedings.[80] Ms. S. also cites various district court decisions finding the unexplained absence of mild mental limitations from a claimant's RFC requires remand.[81]

For his part, the Commissioner relies on *Suttles v. Colvin*,[82] another unpublished Tenth Circuit decision. In *Suttles*, the claimant argued the ALJ improperly disregarded his mental impairment at step four after assessing a mild limitation in the area of

---

[77] 486 F. App'x 711 (10th Cir. 2012) (unpublished).

[78] *Id.* at 713.

[79] *Id.*

[80] *Id.*

[81] *See Willie v. Saul*, No. 19-cv-0329, 2020 U.S. Dist. LEXIS 75188, at *11 (D.N.M. Apr. 29, 2020) (unpublished); *Leyba v. Berryhill*, No. 17-cv-0667, 2018 U.S. Dist. LEXIS 75751, at *7–8 (D.N.M. May 4, 2018) (unpublished); *Marin v. Colvin*, No. 14-cv-01331, 2015 U.S. Dist. LEXIS 111611, at *9–10 (D. Colo. Aug. 24, 2015) (unpublished); *Carnahan v. Berryhill*, No. 17-cv-02236, 2018 U.S. Dist. LEXIS 188034, at *9 (D. Colo. Nov. 2, 2018) (unpublished);

[82] 543 F. App'x 824 (10th Cir. 2013) (unpublished).

concentration, persistence, or pace at step two.[83] The Tenth Circuit disagreed, noting the ALJ "discussed evidence relating to depression" at step four "and then pointedly omitted any limitation associated with that mental impairment on the RFC."[84] While acknowledging the ALJ "could have been more explicit in tying the former discussion to the latter conclusion," the court noted the ALJ "conducted a mental RFC assessment separate from the non-severity determination made at step two."[85] And the court specifically rejected the claimant's argument that the RFC improperly omitted the mild limitation found at step two regarding concentration, persistence, or pace because "mental limitations noted in the threshold inquiry at steps two and three do not apply at later steps."[86] Relying on *Suttles*, district courts have found ALJs sufficiently consider non-severe mental impairments where they discuss the impairments in the RFC analysis.[87]

---

[83] *Id.* at 825–26.

[84] *Id.* at 826.

[85] *Id.*

[86] *Id.*

[87] *See, e.g.*, *Marie C. v. Bisignano*, No. 2:24-cv-00615, 2025 U.S. Dist. LEXIS 186992, at *12 (D. Utah Sept. 19, 2025) (unpublished) ("This court has consistently found the ALJ sufficiently considered a claimant's non-severe mental impairments where he discussed the medical opinion evidence related to the claimant's mental impairments in the RFC analysis."); *Terry M. v. Saul*, No. 2:19-cv-00902, 2020 U.S. Dist. LEXIS 195895, at *13 (D. Utah Sept. 15, 2020) (unpublished) ("Although the ALJ . . . could have been more specific in linking his discussion of the evidence to his RFC determination, the court concludes that his decision demonstrates that he conducted a mental RFC assessment separate from his step-two findings."); *Nancy F. v. Kijakazi*, No. 2:22-cv-00590, 2023 U.S. Dist. LEXIS 159559, at *8–9 (D. Utah Sept. 7, 2023) (unpublished) ("The ALJ's requirement to consider all mental severe and non-severe impairments in the RFC determination is that there is some discussion of mental impairments so that a reviewing court can find that the ALJ made the appropriate

Under *Suttles*, the ALJ in this case was not required to include mild "paragraph B" limitations in the RFC assessment—or expressly explain their omission—so long as he discussed mental impairments in the RFC analysis.[88] The record shows he did so. Specifically, the ALJ addressed Ms. S.'s nonsevere depression and anxiety, noting she had "little active treatment for these conditions during the period at issue other than mention of psychiatry and medication."[89] The ALJ also observed that treatment notes "showed she was improving with counseling and medication in 2019," and "she had a normal mood and affect and was oriented to time and place."[90] Then, the ALJ "pointedly omitted any limitation associated with [these] mental impairment[s] on the RFC."[91] As in *Suttles*, this shows the ALJ separately assessed Ms. S.'s mental impairments in the RFC determination.

Ms. S. also argues pain associated with her physical impairments caused her mild mental impairments.[92] But the ALJ discussed Ms. S.'s pain and its limiting effects throughout his RFC analysis, demonstrating he considered this symptom. The ALJ

---

consideration of mental health concerns during the more in-depth analysis of the RFC." (internal quotation marks omitted)).

[88] *See Suttles*, 543 F. App'x at 826.

[89] (Tr. 24.)

[90] (*Id.*)

[91] *Suttles*, 543 F. App'x at 826.

[92] (*See* Opening Br. 18–20, Doc. No. 11.)

concluded Ms. S.'s physical impairments "cause [her] pain and have been addressed with the limitations" in the RFC—which did not include mental limitations.[93]

In sum, the ALJ's decision shows he considered all severe and nonsevere impairments in assessing Ms. S.'s RFC. The ALJ was not required to include the mild limitations assessed at steps two and three in the RFC analysis. And no specific explanation of their omission was required, where the ALJ's RFC analysis included discussion of Ms. S.'s mental impairments, pain, and resulting limitations. Though he could have been more explicit, the ALJ's discussion is adequate to show he accounted for Ms. S.'s mental impairments and pain in the RFC assessment.

## CONCLUSION

The Commissioner's decision is affirmed.

DATED this 31st day of August, 2026.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

[93] (Tr. 25.)